[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, who is charged with operating under the influence of liquor, has moved in limine to exclude from trial evidence concerning a field sobriety test known as the horizontal gaze nystagmus test. The test was administered to him by the Connecticut State Police during a roadside stop on October 6, 1996 in Windham. The defendant claims primarily that the test is not reliable and does not meet Connecticut's standards for the admission of scientific evidence. For the reasons that follow, this Court denies the motion in limine.[1]
To conduct the horizontal gaze nystagmus or "HGN" test, a police officer moves his finger or a pencil laterally from a midline point twelve to fifteen inches directly in front of the subject's eyes to an endpoint that represents the limit of one's sideways gaze. The police officer will normally look for three clues: 1) whether the eyes follow the target with smooth pursuit, 2) the extent to which the eyes exhibit any jerkiness, which is known as nystagmus, at the point of 1, maximum sideways deviation, and 3) whether the eyes exhibit any nystagmus before a sideways movement of 45 degrees. Lack of smooth pursuit, readily apparent nystagmus at maximum deviation, and early onset of nystagmus are indications that the subject has failed the test. The officer will CT Page 9168 look for each of these three signs in each eye, for a total of six clues. The presence of four or more clues constitutes a failure on the test. See State v. Merritt, 36 Conn. App. 76, 84-85 (1994),cert. dismissed, 233 Conn. 303 (1995); Jack Richman John Jakobowski,The Competency and Accuracy of Police Academy Recruits in the Useof the Horizontal Gaze Nystagmus Test for Detecting Alcohol Impairment, 47 New Eng. J. Optometry, No. 1, at 5, 7 (1994).
 I.
Prior to 1997, the governing standard in Connecticut for the admission of scientific evidence, particularly that of innovative scientific techniques, was that derived from Frye v. United States, 293 F. 1013 (D.C. 1923). See State v. Borrelli, 227 Conn. 153, 163-64 (1993). TheFrye test required that, to be admissible, scientific evidence must have gained "general acceptance in the; particular field in which it belongs." 293 F. at 1014.
In State v. Merritt, 36 Conn. App. at 91, the Appellate Court held that "as a precondition to the admission of testimony concerning HGN testing and results, the party introducing the testimony must establish, pursuant to Frye, the general acceptance of the HGN test." Because the State had not done so in that case, the Appellate Court held that the trial court had abused its discretion in admitting HGN evidence. Id.
The Merritt Court acknowledged that in 1993 the United States Supreme Court, in Daubert v. Merrill Dow Pharmaceuticals,509 U.S. 579 (1993), had held that the Frye test no longer governs as a matter of federal law. 36 Conn. App. at 79-80 n. 2. But theMerritt Court made clear that. at the time, our own Supreme Court had not squarely addressed whether the Daubert approach, should focused on scientific validity or reliability,509 U.S. at 592-93, superseded Frye as a matter of state law.36 Conn. App. at 79-80 n. 2.
In State v. Porter, 241 Conn. 57 (1997), our Supreme Court explicitly held that "the Daubert approach should govern the admissibility of scientific evidence in Connecticut." Id. at 68. This holding did not, however, represent a complete abandonment of the Frye test. Rather, the Frye test serves now as an "important factor" in the trial judge's assessment. Id. at 84. Indeed, "if a trial court determines that a scientific methodology has gained general acceptance, then the Daubert
inquiry will generally end and the conclusions derived from that CT Page 9169 methodology will generally be admissible." Id. at 85 (emphasis in original).
The Porter Court added that, in the event a scientific principle has not gained general acceptance, a proponent may still establish its reliability or validity by other means. Id. at 84-85. Among the many factors that a proponent may rely on are: whether the methodology has been tested and subjected to peer review, the known or potential rate of error, the extent to which the scientific technique relies on subjective interpretations and judgments by the testifying expert, whether the testifying expert can present the methodology in a manner that the fact finder can reasonably draw its own conclusions therefrom, and whether the proffered expert testimony was developed solely for in-court use. Id. at 85-86. In addition, the prestige and background of the testifying expert witness can play a role in determining whether a novel technique employed by that individual is likely to have scientific merit. Id. at 86.
As far as can be determined, no Connecticut Court has assessed the validity of HGN evidence under the Porter standards. This Court will now proceed to do so.
 II.
At the hearing on the motion in limine, the defendant did not call any witnesses. The State presented the testimony of Dr. Jack E. Richman, who is an optometrist and a Professor at the New England College of Optometry in Boston. For the past nine years, Dr. Richmond has instructed police officers on how to administer and assess the HGN test. Dr. Richmond has written one published article on the HGN test, see Jack Richman John Jakobowski, The Competency and Accuracy of Police AcademyRecruits in the Use of the Horizontal Gaze Nystagmus Test forDetecting Alcohol Impairment, 47 New Eng. J. Optometry, No. 1, at 5 (1994), and has several others in progress. Dr. Richman has testified as an expert on the HGN test over a dozen times, in various states.[2]
Dr. Richman testified that the HGN test is generally accepted in the optometric community as a reliable indicator of alcohol or other impairment. As Dr. Richman observed, optometrists have examined for the presence of nystagmus for over fifty years. The optometric community, according to Dr. Richman, and in fact the broader medical community generally accepts the principle that CT Page 9170 alcohol impairs the ability to hold the eyes steady. The HGN test is an application of this principle. See State v. Ruthardt,680 A.2d 349, 357 (Del.Super. 1996).
As Dr. Richman noted, however, most practicing optometrists do not routinely perform HGN tests. Rather, the relevant scientific community for the purposes of our inquiry should also include neurology, behavioral psychology, highway safety, and forensic science. See State v. O'Key, 899 P.2d 663, 685 (Or. 1995). Drawing from a similar cross-section of disciplines, the National Highway Safety Administration (NHTSA) in 1977 conducted a study that conducted a study that concluded that the HGN test was the most sensitive of six field sobriety tests for assessing whether a driver is legally intoxicated. See State v. Ruthardt,680 A.2d 349, 352 (Del.Super. 1996). Today, use of the HGN test to detect motorist impairment by alcohol has spread to ever, v state in the nation. O'Key, 899 P.2d at 686.
Based on these considerations, a majority of courts has found that the HGN test is generally accepted in the relevant scientific community as a reliable indicator of alcohol impairment. Ruthardt,680 A.2d at 357-58. See also O'Key, 899 P.2d at 685 (explaining finding by Supreme Court of Oregon). This Court concurs in this finding.
 III
This Court has examined the other relevant factors under thePorter test, even though, as stated, a finding of general acceptance in the scientific community is sufficient to satisfyPorter. The HGN test has been the subject of extensive field and laboratory testing and scholarly review. See O'Key,899 P.2d at 682, 683-84; Ruthardt, 680 A.2d at 357. The test results generally show that over 77% of the time that a police officer finds a suspect to have failed the HGN test the suspect is in fact impaired by alcohol. The testing revealed accuracy in the 80% to 96% range when the officer detects more than four clues on the HGN test or combined the HGN test with other field sobriety tests. See O'Key, 899 P.2d at 682-83; Ruthardt, 680 A.2d at 357; Richman Jakobowski, supra, at 7; Gregory Good Arol Augsberger, Use of Horizontal Gaze Nystagmus as a Part ofRoadside Sobriety Testing, 63 Am. J. Optometry Physiological Optics 467, 470-71 (1986).[3] While the test does yield some false positives due to certain medical conditions, congenital nystagmus, or other causes, police officers are often able to screen out these false positives by asking the suspect certain pertinent CT Page 9171 questions or by conducting other field sobriety tests. See O'Key,899 P.2d at 684.
The HGN test does rely on some subjectivity in that the officer must correctly move his finger from side to side and correctly assess the response of the suspect's eyes. On the other hand, suspects cannot voluntarily control nystagmus and tolerance to alcohol does not affect the test. O'Key, 899 P.2d at 683; G. Good A. Ausberger, supra, at 469. Further, national standards, such as those published by the NHTSA in 1984, exist to guide police officers in executing the test. See O'Key,899 P.2d at 684. Studies have revealed that officers can be readily trained to administer the HGN test and obtain very accurate results. See Richman Jakobowski, supra; Good Ausberger, supra.
The HGN test was not developed for the purpose of any specific court case but rather to assist police officers in making accurate drunk driving arrests and thereby enhance public safety. See Ruthardt, 680 A.2d at 352; Richman Jakobowski,supra, at 8. Nonetheless, when a party presents HGN test evidence in court, the test is sufficiently straightforward that "the fact finder can reasonably and realistically draw its own conclusions therefrom." State v. Porter, 241 Conn. at 86.
Taking all these factors into consideration, the Court finds that the HGN test evidence satisfies the Porter standards and is therefore admissible. Any remaining objections concerning the validity of the test go to its weight, not its admissibility.[4]
 IV.
The motion in limine is denied.
Schuman, J.